■ In the Matter of ROBERT BINENFELD, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [641 NYS2d 411] —White, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Following an evidentiary hearing on 30 specifications of professional misconduct stemming from petitioner's treatment of nine patients (hereinafter patients A, B, C, D, E, F, G, H and I), a Hearing Committee of the State Board for Professional Medical Conduct (hereinafter the Committee) found petitioner guilty of gross incompetence, gross negligence on a particular occasion, negligence on more than one occasion, incompetence on more than one occasion, failure to maintain a record for each patient and a violation of the term of probation requiring him to fully conform to all proper standards of professional conduct.* The Committee revoked petitioner's license and upon appeal the Administrative Review Board for Professional Medical Conduct (hereinafter the ARB) sustained the Committee's findings and penalty. This CPLR article 78 proceeding ensued.

Petitioner has arrayed a number of due process challenges against the determination. The first is that the Committee was not impartial because its members were appointed by the Chairperson of the Board for Professional Medical Conduct (see, Public Health Law § 230 [10] [e]). In the absence of evidence that this method of appointment disabled the Committee from hearing and deciding this matter on the basis of the evidence, this argument is meritless (see, Matter of Children of Bedford v Petromelis, 77 NY2d 713, 723-724, vacated on other grounds 502 US 1025). We further reject petitioner's contention that the Committee was biased as there is no proof that its determination flowed from the alleged bias (see, Matter of Moss v Chassin, 209 AD2d 889, 890, lv denied 85 NY2d 805, cert denied — US —, 116 S Ct 170).

Petitioner next argues that he was denied due process

---

* The Committee did not consider the charges against patients C, E and F on the ground that their testimony would have been repetitious and redundant.

because respondents have not set forth standards governing a physician's conduct. It is a basic principle of due process that statutes and regulations must give persons of ordinary intelligence a reasonable opportunity to know what is prohibited so that they may act accordingly (*see, Grayned v City of Rockford,* 408 US 104, 108; *United States v Chestman,* 947 F2d 551, 564, *cert denied* 503 US 1004). In the field of professional medical misconduct this notice requirement is fulfilled by Education Law § 6530, which delineates 47 acts of professional misconduct including those petitioner was found guilty of violating (*see,* Education Law § 6530 [3], [4], [5], [6], [29], [32]). While the statute does not specifically enumerate what acts constitute negligence, gross negligence, gross incompetence and incompetence, it does not deprive physicians of due process since those terms provide sufficient warning that physicians must practice their profession in accordance with reasonable medical standards (*see, United States v Ingredient Technology Corp.,* 698 F2d 88, 96, *cert denied* 462 US 1131; *United States v Herrera,* 584 F2d 1137, 1149).

While couched in the terms of a due process challenge, petitioner raises an estoppel argument. He contends that at the time of a prior disciplinary matter in 1988, respondents did not advise him that the treatment he was rendering to patients A, B and D was deficient. As a result, petitioner claims that he has suffered actual prejudice because, if he had been provided with such notice, he would have conformed his practice to accepted norms. This argument is unavailing inasmuch as, in all but rare cases, estoppel cannot be invoked against a governmental agency to prevent it from discharging its statutory duties (*see, Matter of New York State Med. Transporters Assn. v Perales,* 77 NY2d 126, 130). In any event, there is no proof that respondents did, or would have had any occasion to, review these patients' files in conjunction with the unrelated prior disciplinary matter.

At the evidentiary hearing, petitioner was precluded from introducing the testimony of several of his patients. The preclusion of this evidence did not violate the fundamentals of a fair hearing because this testimony would not have been relevant inasmuch as there were no disputed factual issues and the medical issues before the ARB could only be resolved by expert testimony. Thus, the determination cannot be attacked on this ground (*see, Matter of Di Rienz v Constantine,* 151 AD2d 953, 955).

We now examine the record to ascertain if the ARB's determination has a rational basis supported by facts (*see, Matter of*

*Chua v Chassin*, 215 AD2d 953, 954-955, *lv denied* 86 NY2d 708). The record shows that petitioner treated patients A, B and D over a considerable period of time during which he prescribed large amounts of controlled substances despite not having performed diagnostic studies to discover the reason for their pain. Petitioner's treatment of patient B was particularly flagrant in that on 30 occasions he administered intramuscular injections of large doses of demerol, a highly addictive drug, even though he knew this patient was undergoing treatment for narcotic addiction. While his treatment of patients G and H was not as extensive, petitioner continued his practice of prescribing potentially addictive controlled substances without proper diagnosis or meaningful justification. With respect to patient I, petitioner stipulated that he prescribed amoxicillin, a drug chemically related to penicillin, to this patient who was allergic to penicillin. Petitioner also conceded that there were problems with his patients' records.

In our view this record provides ample support for the ARB's determination since petitioner's pattern of dangerous and substandard care was egregious and fell well below accepted medical standards and the degree of care a reasonably prudent physician would have exercised under the same circumstances (*see, Matter of Bogdan v New York State Bd. for Professional Med. Conduct*, 195 AD2d 86, 88, *appeal dismissed, lv denied* 83 NY2d 901; *Matter of Gandianco v Sobol*, 171 AD2d 965, 967). We further note that in the context of a medical disciplinary proceeding a showing that specific conduct posed a foreseeable risk of injury to a particular patient is not necessary to establish a finding of negligence or gross negligence (*see, Matter of Abdelmessih v Board of Regents*, 205 AD2d 983, 985; *Matter of Loffredo v Sobol*, 195 AD2d 757, 760, *lv denied* 82 NY2d 658).

Lastly, when viewed against the public health menace created by the abuse of controlled substances, we cannot say that the penalty of revocation imposed upon petitioner, whose practices contributed to this menace, is shocking to one's sense of fairness (*see, Matter of Pell v Board of Educ.*, 34 NY2d 222, 233; *Matter of Glassman v Commissioner of Dept. of Health of State of N. Y.*, 208 AD2d 1060, 1061, *lv denied* 85 NY2d 801). The fact that lesser penalties may have been imposed in other cases is immaterial since each case is judged according to its own peculiar facts and circumstances (*see, Matter of Edelman v Sobol*, 174 AD2d 896, 897-898, *appeal dismissed* 78 NY2d 1006). Accordingly, we shall not disturb the penalty imposed upon petitioner.

For these reasons, the determination is confirmed.

Cardona, P. J., Mercure, Peters and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.