■ In the Matter of TIMOTHY J. BASSETT, Petitioner, v PRESTON L. FENTON, as Acting Superintendent of the New York State Police, Respondent. [891 NYS2d 195]—

Cardona, P.J.

Following a disciplinary hearing, a Hearing Board recommended that petitioner, a State Trooper, be found guilty of three charges of misconduct and one count of conduct tending to bring discredit upon the Division of State Police. The first two charges of misconduct stemmed from separate incidents: the first, on

January 8, 2007, when petitioner, among other things, fled from two marked State Police vehicles and, during the ensuing high speed pursuit, failed to halt at two stop signs; the second, on March 26, 2007, when he left threatening messages on the telephone answering machine of Jessica Wilczek, the mother of one of his children, "that also reflected an improper attempt to coerce her into not using legal counsel regarding a joint custodial matter when she had a right to do so." The remaining two disciplinary charges emanated from a series of events occurring on March 26, 2007, resulting in petitioner being accused of causing and protracting a lengthy standoff with police and rescue personnel after he barricaded himself in his residence indicating he might harm himself while, at the same time, issuing a series of demands before voluntarily exiting the building. Due to the findings of guilt on these charges, the Hearing Board recommended that petitioner's employment be terminated. Respondent accepted the findings and terminated petitioner's employment. This transferred CPLR article 78 proceeding ensued.

Contrary to petitioner's assertion, the record contains substantial evidence supporting the determination finding him guilty of the four disciplinary charges. Regarding the first charge involving the high-speed chase, not only was there testimony from two State Troopers who recognized and pursued petitioner, there was also confirmatory audio and video tapes of the pursuit from the in-car system mounted in one of the patrol cars. Additionally, Wilczek testified that petitioner spoke to her by cell phone during the incident and expressed awareness that he was being pursued by State Police. With regard to the second misconduct charge, Wilczek testified that, after she told petitioner she was going to consult an attorney about custody and support issues involving their infant son, petitioner threatened her by saying that she was going "to be arrested for endangering the welfare of a child." Wilczek contacted petitioner's supervisor and was told that no complaint or investigation had been conducted and there was no basis for petitioner to be making statements of that nature. Wilczek testified that petitioner continued to call her that day and the threatening voice messages from her answering machine were produced at the hearing. The Hearing Board found Wilczek's testimony credible and consistent with the taped messages produced as evidence.

Regarding the third disciplinary charge for misconduct and the fourth alleging actions tending to bring discredit upon the Division of State Police, the Hearing Board relied upon the

testimony of several witnesses, including Wilczek. According to Wilczek, petitioner sounded despondent when she spoke to him again on March 26, 2007, after she told him she would not leave their son at his house due to his intoxicated state. The Hearing Board also credited testimonies from three State Troopers that they had been informed that petitioner might harm himself. They indicated that they had spoken with petitioner and believed him to be at risk, that petitioner refused to exit his residence and that the barricade situation outside his residence continued for over two hours, during which time petitioner made various demands to speak to people, including Wilczek.

In our view, "the record clearly supports respondent['s] findings as to the challenged charges" (*Matter of Wilburn v McMahon*, 296 AD2d 805, 806 [2002]). Although petitioner attempts to minimize the seriousness of his actions in, for example, leading a high speed chase and instigating a substantial mobilization of police and rescue resources by refusing to leave his residence, the proof belies the assertion that the charges were erroneous or merely the result of excusable lapses in judgment brought about by stress that were blown out of proportion.* Notably, to the extent that petitioner's testimony differed from that of the other witnesses at trial concerning the incidents, this presented a credibility issue that the Hearing Board was entitled to resolve (*see Matter of Tessiero v Bennett*, 50 AD3d 1368, 1369 [2008]; *Matter of Mokszycki v McMahon*, 6 AD3d 952, 953 [2004]). Thus, we find no basis to disturb the findings of guilt as to the disciplinary charges.

Turning lastly to petitioner's challenge to the penalty of termination, he claims that the events underlying the subject charges were "a manifestation of his temporary mental illness for which he has received treatment and for which he should not be terminated." While the record sets forth in detail petitioner's emotional stress over the ending of his relationship with Wilczek and their ensuing custody disagreements, we are unpersuaded, under the particular circumstances herein, that the penalty of dismissal was "so disproportionate to the offense as to shock our sense of fairness" (*Matter of Mokszycki v McMahon*, 6 AD3d at 953).

Significantly, "a State Trooper holds a position of great sensitivity and trust" (*Matter of Carney v Kirwan*, 44 AD2d 613, 614 [1974]; *see Matter of Gadway v Connelie*, 101 AD2d 974, 975 [1984]) and "[a] higher standard of fitness and

---

* Petitioner points out that, after the events of March 2007, he received inpatient and outpatient treatment for his depression, anxiety and alcohol dependency and, upon completion of that treatment, was certified fit for duty.

character pertains to police officers than to ordinary civil servants" (*Matter of Faure v Chesworth*, 111 AD2d 578, 579 [1985]). Along these lines, we note that the recommendation to terminate petitioner focused mainly on petitioner's actions *after* his mental health treatment and during the disciplinary hearing when, as found by the Hearing Board, petitioner repeatedly contradicted his own prior sworn statements and failed to "accept[ ] personal responsibility" for conduct that he, as a State Trooper, should know was wrong, such as leading other troopers on a high speed chase and perpetuating a barricade situation. Given the fact that the "determination of an appropriate sanction involves a matter of internal discipline within a law enforcement organization, [and] is entitled to deference" (*Matter of Wilburn v McMahon*, 296 AD2d at 807), we find no basis to disturb the penalty imposed herein.

Peters, Kane, Stein and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.